# **Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF NEW YORK,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**MICHAEL S. REGAN, in his official capacity as Administrator, U.S. Environmental Protection Agency, and U.S. ENVIRONMENTAL PROTECTION AGENCY,**<br><br>**Defendants.** | **Case No. 1:23-cv-02767**<br><br>**[PROPOSED] CONSENT DECREE** |

## [PROPOSED] CONSENT DECREE

WHEREAS, on September 21, 2023, Plaintiffs New York, Alaska, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, Oregon, Vermont, Washington, and the Puget Sound Clean Air Agency (collectively, "Plaintiffs") filed the above-captioned case against Defendant Michael Regan, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and Defendant U.S. Environmental Protection Agency ("EPA" or "Defendants"), (collectively, the "Parties"), *see* Compl. (ECF No. 1);

WHEREAS, Plaintiffs allege that EPA has failed to undertake certain nondiscretionary duties under the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §§ 7401–7671q, and that such alleged failure is actionable under CAA section 304(a)(2), 42 U.S.C. § 7604(a)(2), *see* Compl. ¶¶ 1, 38;

WHEREAS, Plaintiffs allege that EPA failed to perform its obligations under CAA section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), which requires that EPA "at least every 8 years,

1

review and, if appropriate, revise" the New Source Performance Standards ("NSPS") or to promulgate a determination that such review "is not appropriate in light of readily available information on the efficacy of such standard[s]" for two categories of stationary sources: (1) New Residential Wood Heaters, 40 C.F.R. Part 60, Subpart AAA, and (2) New Residential Hydronic Heaters and Forced-Air Furnaces, 40 C.F.R. Part 60, Subpart QQQQ, *see* Compl. ¶¶ 17-18, 29; 38-40;

WHEREAS, the relief requested in the Complaint includes, among other things, an order from this Court to establish dates certain by which EPA must fulfill its alleged obligations under CAA sections 111(b)(1), *see id.* at 12 ¶ B;

WHEREAS, on February 28, 2023, EPA's Inspector General issued a report finding that "EPA's residential wood heater program does not provide reasonable assurance that wood heaters are properly tested and certified before reaching consumers[;]" the "2015 NSPS and the certification test methods lack specificity and allow for too much flexibility[;]" and the NSPS "certificate-of-compliance process lacks internal controls."[1]

WHEREAS, on April 28, 2023, EPA's Office of Enforcement and Compliance Assurance (OECA) and Office of Air and Radiation (OAR) jointly responded to the Inspector General's report, and acknowledged that "further improvements are needed to regain the public's trust."[2]

---

[1] U.S. Office of Inspector General, The EPA's Residential Wood Heater Program Does Not Provide Reasonable Assurance that Heaters Are Properly Tested and Certified Before Reaching Consumers (Feb. 28, 2023), 1, 30, available at https://www.epaoig.gov/sites/default/files/reports/2024-04/_epaoig_20230228-23-e-0012_2.pdf.

[2] Response to Office of Inspector General Final Report: "The EPA's Residential Wood Heater Program Does Not Provide Reasonable Assurance that Heaters Are Properly Tested and Certified Before Reaching Consumers (April 28. 2023), 2, available at https://www.epaoig.gov/sites/default/files/document/2024-04/oeca_oar_response_-_oig_final_wh_report_no_23_e_0012_2.pdf.

EPA OECA and OAR also proposed corrective actions, including the completion of updated NSPS for wood heaters by November 30, 2027. *Id.* at 6 (Recommendation 4). EPA OECA and OAR noted in their response to the Inspector General that the agency "anticipate[d] moving to revise the NSPS after the [cord wood] test methods [discussed in Recommendation 5] have been finalized and a new emissions standard has been determined through data review" because "these [test methods] form the critical project path toward NSPS revision, meaning that these must be finalized before revision(s) to the NSPS so that they may be incorporated into the future rule revision." *Id.*;

WHEREAS, EPA is conducting ongoing testing of existing wood heaters in partnership with third parties for the purposes of developing more accurate test methods for such devices;

WHEREAS, EPA is also conducting ongoing testing of the integrated duty cycle test method for cord wood as a new test method, which is likely to inform the standards of performance in a new NSPS;

WHEREAS, the Parties recognize the importance of developing data-supported test methods and certifications of wood heating devices to ensure reliable, accurate, and enforceable certification of devices under any updated NSPS;

WHEREAS, the Parties have agreed to a settlement of this action without admission of any issue of fact or law, except as expressly provided herein;

WHEREAS, the Parties consider this Consent Decree to be an adequate and equitable resolution of all the claims in this matter and therefore wish to effectuate a settlement;

WHEREAS, it is in the interest of the public, Plaintiffs, EPA, and judicial economy to resolve this matter without protracted litigation;

WHEREAS, the Parties, by entering into this Consent Decree, do not waive or limit any claim, remedy, or defense, on any grounds, related to any final EPA action required by this Consent Decree;

WHEREAS, the Court, by entering this Consent Decree, finds that the Consent Decree is fair, reasonable, in the public interest, and consistent with the CAA;

NOW THEREFORE, before the taking of testimony, without trial or determination of any issues of fact or law, and upon the consent of the Parties, it is hereby ordered, adjudged, and decreed that:

1. This Court has jurisdiction over the claims set forth in the Complaint and may order the relief contained in this Consent Decree.

2. Venue is proper in the United States District Court for the District of Columbia.

3. The Parties to this Consent Decree are the above-captioned Plaintiffs and EPA.

4. With respect to the NSPS for New Residential Wood Heaters under 40 C.F.R. Part 60, Subpart AAA:

   a. No later than December 15, 2026, EPA shall:

      i. sign a determination under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), that "review" of Subpart AAA "is not appropriate in light of readily available information on the efficacy of [the] standard"; or

      ii. review Subpart AAA under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), and sign either:

         A. a proposed rule containing revisions to Subpart AAA; or

         B. a proposed determination not to revise Subpart AAA.

   b. If EPA signs a proposed rule or a proposed determination pursuant to paragraph 4(a)(ii) above, then no later than December 15, 2027, EPA shall sign either:

      i. a final rule containing revisions to Subpart AAA under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B); or

   ii. a final determination under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), not to revise Subpart AAA.

5. With respect to the NSPS for New Residential Hydronic Heaters and Forced-Air Furnaces under 40 C.F.R. Part 60, Subpart QQQQ:

 a. No later than December 15, 2027, EPA shall:

  i. sign a determination under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), that "review" of Subpart QQQQ "is not appropriate in light of readily available information on the efficacy of [the] standard"; or

  ii. review Subpart QQQQ under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), and sign either:

   A. a proposed rule containing revisions to Subpart QQQQ; or

   B. a proposed determination not to revise Subpart QQQQ.

 b. If EPA signs a proposed rule or a proposed determination pursuant to paragraph 5(a)(ii) above, then no later than December 15, 2028, EPA shall sign either:

  i. a final rule containing revisions to Subpart QQQQ under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B); or

  ii. a final determination under section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), not to revise Subpart QQQQ.

6. Beginning ninety (90) days after entry of this Consent Decree, EPA will meet quarterly via teleconference or videoconference with Plaintiffs, at dates to be agreed upon by the Parties, in order for EPA representatives to provide a status update to Plaintiffs on the development of the actions described in Paragraphs 4-5.

7. Within twenty-one (21) business days after the signing any of documents described in Paragraphs 4-5, *infra*, the appropriate EPA official shall forward each such document to the Office of the Federal Register for review and publication in the *Federal Register*.

8. The deadlines set forth in Paragraphs 4-5 hereof may be extended: (a) by written stipulation of the Parties with notice to the Court, or (b) by the Court following motion of EPA

5

for good cause shown pursuant to the Federal Rules of Civil Procedure, and upon consideration of any response by Plaintiffs and any reply by EPA. Any other provision of this Consent Decree may be modified by the Court following motion of an undersigned party for good cause shown pursuant to the Federal Rules of Civil Procedure and upon consideration of any response by a non-moving party and any reply.

9. The Parties shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

10. The Parties agree that this Consent Decree shall constitute a complete and final settlement of all claims in the Complaint.

11. Except as provided herein, nothing in this Consent Decree shall be construed to limit or modify any discretion accorded to EPA by the CAA or by general principles of administrative law in taking the actions that are the subject of this Consent Decree, including EPA's discretion to alter, amend, or revise any final actions contemplated by this Consent Decree.  EPA's obligation to perform each action specified in this Consent Decree does not constitute a limitation or modification of EPA's discretion within the meaning of this Paragraph.

12. Except as expressly provided herein, nothing in this Consent Decree shall be construed as an admission of any issue of fact or law. By entering into this Consent Decree, the Parties do not waive or limit any claim, remedy, or defense, on any grounds, related to any final action EPA takes with respect to the actions addressed in this Consent Decree.

13. Nothing in the terms of this Consent Decree shall be construed: (a) to confer upon this Court jurisdiction to review any final rule or determination issued by EPA pursuant to this Consent Decree, (b) to confer upon this Court jurisdiction to review any issues that are within the exclusive jurisdiction of the United States Courts of Appeals under CAA section 307(b)(1), 42

U.S.C. § 7607(b)(1), or (c) to waive any claims, remedies, or defenses that the Parties may have under CAA section 307(b)(1), 42 U.S.C. § 7607(b)(1).

14. It is hereby expressly understood and agreed that this Consent Decree was jointly drafted by counsel for the Parties. Accordingly, the Parties hereby agree that any and all rules of construction that construe ambiguities in this document against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

15. In the event of a dispute between the Parties concerning the interpretation or implementation of any aspect of this Consent Decree, the disputing party shall provide the other party with a written notice, via electronic mail, outlining the nature of the dispute and requesting informal negotiations. The Parties shall meet and confer in order to attempt to resolve the dispute. If the Parties are unable to resolve the dispute within twenty-one days after receipt of the notice or such other time as the Parties agree to, a party may move the Court to resolve the dispute.

16. No motion or other proceeding seeking to enforce this Consent Decree or for contempt of Court shall be filed unless the procedures set forth in Paragraph 15 have been followed.

17. The deadline for filing a motion for Plaintiffs' costs of litigation, including attorneys' fees, is hereby extended until ninety (90) days after this Consent Decree is entered by this Court.  During this time, the Parties shall seek to resolve informally any claim for costs of litigation, including attorneys' fees, and if they cannot, Plaintiffs will submit the issue to the Court for resolution.  Nothing in this Paragraph shall be construed as an admission or concession

by EPA that Plaintiffs are entitled to or eligible for recovery of any costs or attorney's fees. EPA does not waive or limit any defenses it may have to such claim.

18. The Court shall retain jurisdiction to determine and effect compliance with this Consent Decree, to resolve any disputes thereunder, and to consider any requests for costs of litigation, including attorneys' fees. When EPA's obligations under Paragraphs 4-5 have been completed and Plaintiffs' claim for costs of litigation, including attorneys' fees, have been resolved, the Parties may either jointly notify the Court that the Consent Decree should be terminated and the case dismissed, or EPA may so notify the Court by motion.  If EPA notifies the Court by motion, Plaintiffs shall have thirty (30) days in which to respond, unless the Parties stipulate to a longer time for Plaintiff to respond.

19. The Parties agree and acknowledge that final approval and entry of this proposed Consent Decree are subject to the requirements of CAA section 113(g), 42 U.S.C. § 7413(g). That section provides that before this Consent Decree is entered by the Court, EPA must provide notice of this proposed Consent Decree in the Federal Register and provide an opportunity for public comment. After this Consent Decree has undergone notice and comment, the Administrator and/or the Attorney General, as appropriate, shall promptly consider any written comments received in determining whether to withdraw or withhold their consent to the Consent Decree, in accordance with CAA section 113(g).  If the Administrator and the Attorney General do not elect to withdraw or withhold consent, EPA shall promptly file a motion that requests that the Court enter this Consent Decree. If the Administrator and/or the Attorney General withdraw or withhold consent pursuant to CAA section 113(g), this agreement shall be void and its terms may not be used as evidence in any litigation between the parties.

20. The Parties recognize and acknowledge that the obligations imposed upon EPA under this Consent Decree can only be undertaken using appropriated funds legally available for such purpose. No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

21. The Parties recognize that the possibility exists that a lapse in the appropriations that fund EPA could delay compliance with the timetables in this Consent Decree. If a lapse in appropriations for EPA occurs within one hundred and twenty (120) days prior to the deadlines in Paragraphs 4 and 5 of this Consent Decree, those deadlines will be extended automatically one day for each day of the lapse in appropriations. Nothing in this paragraph shall preclude EPA from seeking an additional extension through modification of this Consent Decree pursuant to Paragraph 9.

22. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of either Party and the terms of this Proposed Consent Decree may not be used as evidence in any litigation between the Parties.

23. This Consent Decree applies to, is binding upon, and inures to the benefit of the Parties and their successors, assigns, and designees. This Consent Decree shall not be construed to create any rights in, or grant any cause of action to, any third party that is not a party to this Consent Decree.

24. Any notices required or provided for by this Consent Decree shall be made in writing, via email, or other means if the documents cannot be readily transmitted via email, and sent to those counsel signing below (or to any new address of counsel as filed and listed in the docket of the above-captioned matter, at a future date).

25. The undersigned representatives of EPA and Plaintiffs certify that they are fully authorized by the party they represent to consent to the Court's entry of the terms and conditions of this Consent Decree.

26. Any date or deadline falling on a weekend or federal holiday is automatically extended to the next business day.

SO ORDERED this _____ day of _____, 2024.

_____
The Honorable Colleen Kollar-Kotelly
United States District Judge

**FOR THE STATE OF NEW YORK**

LETITIA JAMES
Attorney General

By: /s/ Nicholas C. Buttino
Nicholas C. Buttino
Michael Myers
Assistant Attorney General
Env. Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2406
Nicholas.Buttino@ag.ny.gov

**FOR THE STATE OF ALASKA**

TREG TAYLOR
Attorney General

By: /s/ Cody B. Doig
Cody Doig
Senior Assistant Attorney General
Environmental Section
Alaska Department of Law
1031 W. 4th Ave., Suite 200
Anchorage, AK 99501-1994
(907) 269-5211
cody.doig@alaska.gov

**FOR THE STATE OF ILLINOIS**

KWAME RAOUL
Attorney General

By: /s/ Jason E. James
Jason E. James
Assistant Attorney General
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(872) 276-3583
Jason.James@ilag.gov

**FOR THE STATE OF MARYLAND**

ANTHONY G. BROWN
Attorney General

By: /s/ Steven J. Goldstein
Steven J. Goldstein
Special Assistant Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6414
Sgoldstein@oag.state.md.us

**FOR THE COMMONWEALTH OF MASSACHUSETTS**

ANDREA JOY CAMPBELL
Attorney General

By: /s/ Turner H. Smith
Turner H. Smith
Assistant Attorney General & Deputy Chief
Emily Field
Assistant Attorney General
Energy and Environment Bureau
1 Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2782
Turner.Smith@mass.gov

**FOR THE STATE OF MINNESOTA**

KEITH ELLISON
Attorney General

By: /s/ Peter N. Surdo
Peter N. Surdo
Special Assistant Attorney General
Minnesota Attorney General's Office
445 Minnesota Street
Town Square Tower Suite 1400
Saint Paul, Minnesota 55101
(651) 757-1061
Peter.Surdo@ag.state.mn.us

| | |
|---|---|
| **FOR THE STATE OF NEW JERSEY** | **FOR THE STATE OF VERMONT** |

MATTHEW J. PLATKIN
Attorney General

By: /s/ *Lisa J. Morelli*
Lisa J. Morelli
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
(609) 376-2740
Lisa.Morelli@law.njoag.gov

**FOR THE STATE OF OREGON**

ELLEN F. ROSENBLUM
Attorney General

By: /s/ *Paul Garrhan*
Paul Garrahan
Attorney-in-Charge
Steve Novick
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.state.or.us
Steve.Novick@doj.state.or.us

CHARITY R. CLARK
Attorney General

By: /s/ *Hannah Yindra*
Hannah Yindra
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Hannah.Yindra@vermont.gov

**FOR THE STATE OF WASHINGTON**

ROBERT W. FERGUSON
Attorney General

By: /s/ *Caroline E. Cress*
Caroline E. Cress
Assistant Attorney General
Washington State
Attorney General's Office
P.O. Box 40117
Olympia, WA 98504
(360) 586-4613
caroline.cress@atg.wa.gov

**FOR THE PUGET SOUND CLEAN AIR AGENCY**

By: /s/ *Jennifer Dold*
Jennifer A. Dold
General Counsel
Puget Sound Clean Air Agency
1904 Third Avenue, Suite 105
Seattle WA USA 98101
(206) 689-4015
jenniferd@pscleanair.gov

**FOR MICHAEL REGAN, ADMINISTRATOR**
**U.S. EPA, U.S. EPA**

By: */s/ Bryan J. Harrison*
Bryan J. Harrison
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20002
Telephone: (202) 305-5426
E-mail: bryan.harrison@usdoj.gov